UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

| | | |
|---|---|---|
| MARK A. GUTERMAN, individually and on behalf of all others similarly situated, | : | No. 17-cv-4812 |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs.- | : | **CLASS ACTION** |
| | : | **COMPLAINT** |
| COSTCO WHOLESALE CORPORATION | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------------------X

Plaintiff Mark A. Guterman ("Plaintiff"), individually and on behalf of all others similarly situated, alleges upon personal information as to himself, and upon information and belief as to all other allegations, for his Class Action Complaint ("Complaint") against Defendant Costco Wholesale Corporation ("Costco"), as follows:

## INTRODUCTION

1.      Title 20, Chapter IV, Subchapter A, Section 526.5 of the Codes, Rules and Regulations of the State of New York Department of Taxation and Finance ("NYCRR"), 20 NYCRR § 526.5 ("§ 526.5"), governs the computation of "receipts" subject to New York sales tax ("Sales Tax") imposed under New York Tax Law ("NYTL") § 1105 when coupons are used in connection with the purchase of items subject to Sales Tax.

2.      In connection with the use of "manufacturers' coupons," § 526.5(c) regulates three different factual variations regarding the Sales Tax "due":

(c)(1) *Where a manufacturer issues a coupon* entitling a purchaser to a credit on the item purchased, the tax is due on the full amount of the receipt. The receipt is composed of the amount paid and the amount of the coupon credit. The coupon credit reflects a payment or reimbursement by another party to the vendor. (emphasis added)

(c)(2) *Where a store issues a coupon, entitling a purchaser to a credit on the item purchased, for which it is reimbursed by a manufacturer or distributor, the tax is due on the full amount of the receipt.* The receipt is composed of the amount paid and the amount of the coupon credit. *The coupon must indicate, by "mfr" or some other code, that reimbursement is made.* The reimbursement from the manufacturer or distributor to the store may be made in any form, such as cash or a credit against purchases or in additional merchandise. (emphasis added)

\* \* \*

(c)(4) *Where a store issues a coupon involving manufacturer's reimbursement, but does not disclose that fact to the purchaser on the coupon or in the advertisement, the vendor will collect from the purchaser only the tax due on the reduced price, but will be required to pay the tax on the entire receipt—the amount of the price and the reimbursement received from the manufacturer or distributor.* (emphasis added)

3.      One of Costco's primary promotional programs is the distribution of standard form, monthly coupon mailers ("coupon booklets"). Each monthly coupon booklet is valid during a prescribed date range identified in the booklet, and includes store-issued coupons entitling Costco customers to reduced prices for their purchases in Costco's warehouse facilities. The booklets and the coupons are briefly described in this Introduction, and are described in full relevant detail in the Statement of Facts below.

4.      Generally, Costco's coupon booklets valid prior to August 8, 2013, included a combination of different store-issued coupons providing reduced prices for customers' purchases in Costco's warehouses that either were identified as a "manufacturer's coupon" on the coupon or in the booklet, or that were identified as providing "manufacturer's savings," although the coupons identified as providing "manufacturer's savings" did not disclose that those savings were the result of a "manufacturer's reimbursement" to Costco.

5.      Beginning with the coupon booklet valid for the period August 8-September 1, 2013 and continuing to the present, Costco's coupon booklets and coupons providing reduced prices for customers' purchases in Costco's warehouses changed materially. These booklets and

coupons eliminated any indication that the coupons are "manufacturers' coupons," and lacked any disclosure that that the reduced price is the result of a "manufacturer's reimbursement" to Costco.

6.      Costco's monthly coupon booklets and coupons valid for the period beginning three years prior to the commencement of this action and continuing to the present (the "Class Period") do not indicate "by 'mfr' or some other code" that they are "manufacturers' coupons," and do not disclose that the reduced price is the result of a "manufacturer's reimbursement" to Costco. Thus, under § 526.5(c)(4), Costco's customers making coupon-related purchases subject to Sales Tax at Costco's New York warehouses are liable only for the Sales Tax on the reduced price, and *Costco itself is liable for the Sales Tax on the difference between the reduced price and the full price before the price reduction*.

7.      Costco, however, has illegally charged its New York customers Sales Tax on the full price rather than the reduced price of their coupon-related warehouse purchases subject to Sales Tax, and has illegally shifted *its liability* for Sales Tax under § 526.5(c)(4) to its New York customers. Nevertheless, the total Sales Tax remitted by Costco to the State of New York on these sales is the correct amount, and not an overpayment of Sales Tax as might be the case in connection with the remittance by Costco of Sales Tax charged customers for items excluded from Sales Tax under New York law.

8.      NYTL § 1139 addresses refunds of Sales Taxes "erroneously, illegally or unconstitutionally collected or paid." Under § 1139(a)(i), a person who has paid the tax "to a person required to collect [the] tax" may file an application with the tax commission for a refund or credit. Regulation 20 NYCRR § 534.2 addresses the application for the refund or credit, and § 534.2(a)(2)(i) identifies the information required, including under § 534.2(a)(2)(i)(g) "a full

explanation of the facts on which the claim is based, including substantiation of the basis for and the amount of the claim." Thus, if a Costco customer were required to file an application for a refund or credit of the amount of Costco's share of the liability for Sales Tax under § 526.5(c)(4) that Costco illegally shifted to the customer, the customer would need to know the dates and amounts of all or as many coupon-related purchases as possible with supporting substantiation, and the Sales Tax apportionable to the amount of each coupon, as well as the fact that Costco has illegally shifted its liability for Sales Tax under § 526.5(c)(4) to its New York customers.

9.      NYTL § 1139 and the related regulations also provide a remedy by which Costco's customers can obtain repayment of the Sales Tax illegally collected by Costco *without requiring the customers to first file a refund application with the tax commission.* Under § 1139(a)(ii), Costco, as the person who has collected and paid the Sales Tax to the tax commission and has all of the relevant electronically stored structured data regarding the Sales Tax charged to its customers, may apply for a refund, but the refund may only be paid if Costco has "first establish[ed] to the satisfaction of the tax commission, under such regulations as it may prescribe, that [Costco] has repaid such tax to the customer."

10.     Two regulations prescribed by the tax commission, 20 NYCRR § 534.2 and 20 NYCRR § 534.8, both specifically address the illegal collection of the Sales Tax by Costco from its customers.

11.     Under 20 NYCRR § 534.2(c)(1):

> Any person who has erroneously, illegally, or unconstitutionally collected any tax from a customer and remitted such tax to the Department of Taxation and Finance *must repay such tax to the customer* before the Department of Taxation and Finance may refund any amounts to him. (emphasis added)

The regulation continues that "[a]ny such person must maintain an accurate record of" information including the nature and dates of the transactions and the amount of Sales Tax paid

on the transactions, the "reason for repayment of the tax to each customer," and prescribed customer identifying information and proof of repayment to each customer repaid.

12.     Regulation 20 NYCRR § 534.8 is specifically entitled "Refunds or credits based on erroneous, illegal, or unconstitutional payment or collection of tax." This regulation provides in §§ 534.8(a)(2) and (a)(3) as follows:

> (a)(2)  Any person who has erroneously, illegally, or unconstitutionally collected a tax from a customer may repay such tax to the customer and in turn claim a refund or credit of such tax from the Department of Taxation and Finance, provided the tax has been paid to the Department of Taxation and Finance.

> (a)(3)  No refund or credit may be made to any person of tax which he collected from a customer until he shall first establish to the satisfaction of the Department of Taxation and Finance, as provided in section 534.2 of this Part, that he has in fact repaid such tax to the customer.

13.     New York Tax Law, therefore, provides *two different remedies* for Costco's New York customers to recover the Sales Tax that was illegally collected from them by Costco. And one of those remedies, described in NYTL § 1139(a)(ii) and further prescribed under 20 NYCRR §§ 534.2 and 534.8, entitles Costco's New York customers to obtain repayment of the Sales Tax illegally collected by Costco *without the need to first file a refund application with the tax commission.*

14.     In fact, the New York State Tax Appeals Tribunal has implicitly approved of the use of a class action to obtain repayment of Sales Tax illegally collected by a person from its New York customers before that person can then file for a refund under NYTL § 1139 and 20 NYCRR §§ 534.2 and 534.8. In *In re New Cingular Wireless PCS LLC,* Decision DTA No. 825318 (N.Y. Tax Appeals Tribunal Feb. 16, 2016), the Tax Appeals Tribunal affirmed the denial of New Cingular Wireless' refund application because New Cingular Wireless had failed to comply with the customer repayment requirements of NYTL § 1139 and 20 NYCRR §§ 534.2

and 534.8 in connection with a class action settlement requiring the repayment of the Sales Taxes to its customers.[1]

15.     Because Costco has illegally shifted its Sales Tax liability to its New York customers, Costco has no incentive to repay these customers for the illegally charged Sales Tax and then file a refund application for what amount, if any, it might contend it is entitled to have refunded or credited to it. Further, because the total Sales Tax remitted by Costco to the State of New York on these sales is the correct amount, the Department of Taxation and Finance does not have an incentive to force Costco to repay its customers for the Sales Tax liability Costco has illegally shifted to and collected from them.

16.     By his Complaint, Plaintiff is asserting an implied private right of action under NYTL § 1139(a)(ii), and 20 NYCRR §§ 526.5(c)(4), 534.2 and 534.8, to require Costco to repay to Plaintiff and Costco's other New York customers the amount of its Sales Tax liability that Costco has illegally shifted to and collected from them. Plaintiff asserts this implied private right of action individually and on behalf of the following class:

> All Costco customers who, for the period beginning three years prior to the commencement of this action and continuing up to and including the present (the "Class Period"), paid New York State Sales Tax to Costco for their purchases at Costco's New York warehouses on the full price rather than the reduced price of taxable items when the price reduction was based on a coupon issued by Costco in its monthly coupon booklet (the "Class"). Excluded from the Class are Costco and Costco's directors, officers, parents, affiliates, subsidiaries and successors.

17.     Additionally, Plaintiff is asserting a claim for violations of New York General Business Law ("GBL") § 349 to obtain repayment by Costco to the Class of the illegally collected Sales Tax, based on Costco's deceptive acts and practices, including (i) Costco's failure to indicate that its coupons are "manufacturers' coupons" and to disclose that the reduced

---

[1] Decision available at https://www.dta.ny.gov/pdf/decisions/825318.dec.pdf. Currently under appeal, No. 522964, New York State Supreme Court, Appellate Division, Third Department (oral argument held on April 28, 2017).

price of taxable items purchased by the Class is the result of a "manufacturer's reimbursement" to Costco, (ii) Costco's illegal shifting of its liability for Sales Tax under § 526.5(c)(4) to the Class, and (iii) the resulting illegal hidden price increase imposed by Costco on the Class.

18.     By his action, Plaintiff seeks, under NYTL § 1139 and 20 NYCRR §§ 526.5(c)(4), 534.2 and 534.8, to recover each Class member's actual damages caused by Costco's illegal shifting of its Sales Tax liability to the members of the Class. Additionally, Plaintiff seeks to recover under GBL § 349 each Class member's actual damages or $50, whichever is greater, as well as an increased award of damages in an amount not to exceed three times each Class member's actual damages up to $1,000 because, as further alleged below, Costco has "willfully or knowingly violated [§ 349]."

## THE PARTIES

19.     Plaintiff Guterman resides in Westchester County, New York, within this judicial District, and is a citizen of the State of New York. Plaintiff is a Costco customer who has paid Sales Tax to Costco at a New York warehouse during the Class Period on the full price rather than the reduced price of taxable items purchased when the price reduction was based on a coupon issued by Costco in its monthly coupon booklet, and has been injured by Costco's illegal and deceptive acts and practices.

20.     Costco is incorporated under the laws of, and has its principal executive offices in, the State of Washington. Costco generally is engaged in the operation of membership warehouses that offer its members low prices on a limited selection of nationally branded and private-label products in a wide range of merchandise categories. According to Costco's Form 10-K filed with the Securities and Exchange Commission for the fiscal year ending August 28, 2016 ("10-K"), as of August 28, 2016, Costco operated approximately 500 warehouses in the

United States and Puerto Rico, and more than 200 additional warehouses in eight other countries worldwide. As of that same date, Costco had more than 47 million paid member customers, and more than 86 million cardholder customers, worldwide. Costco operates 18 warehouses within New York State.

## JURISDICTION AND VENUE

21.     The Article III judicial Power is jurisdictionally vested in this Court under 28 U.S.C. §1332(d), the Class Action Fairness Act of 2005, because:

(a)     The Class Plaintiff seeks to represent is estimated to include many hundreds of thousands and probably in excess of one million members, based on the fact that Costco has 18 warehouses in New York, and that each Costco warehouse worldwide has an average of approximately 66,000 Costco member customers and 122,000 cardholder customers entitled to purchase items at Costco's warehouses.

(b)     There is diversity of citizenship between any one member of the Class (named and unnamed) and Costco. Plaintiff is a citizen of New York State, the Class is substantially comprised of the citizens of New York State, and Costco is a Washington corporation with its principal executive offices in Washington State.

(c)     The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. As already noted, the Class is comprised of many hundreds of thousands and probably in excess of one million Class members, and Plaintiff reasonably estimates that Costco's Sales Tax liability illegally shifted to these Class members during the more than three year Class Period exceeds $5 million based on the dollar amounts of the coupons for taxable items in the monthly coupon booklets. Further, GBL § 349, under which Plaintiff also asserts a claim, entitles each injured Class member to individually recover the Class member's

actual damages or $50, whichever is greater, as well as an amount not to exceed three times each Class member's actual damages up to $1,000 based on Costco's willful or knowing violations of § 349. Thus, under GBL § 349, the actual damages or minimum recovery and the matter in controversy exceed tens of millions of dollars.

22.     (a)     Venue is proper in this judicial District under 28 U.S.C. §§ 1391(b)(1), (c)(2) and (d), because Costco, the only defendant, is subject to the Court's personal jurisdiction in connection with this action under New York Civil Practice Law & Rules § 302, and thus resides in this District.

(b)     Venue also is proper in this judicial District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff shops at Costco in this judicial district, and his claims regarding Costco's illegal and deceptive practices are based on his Costco transactions in this District. Additionally, Costco operates 5 of its 18 New York warehouses in this District.

## STATEMENT OF FACTS

**I.     Costco's Monthly Coupon Booklets And Coupons During The Class Period Do Not Indicate That The Coupons Are "Manufacturers' Coupons," And Do Not Disclose That The Reduced Price Is The Result Of A "Manufacturer's Reimbursement" To Costco**

23.     Starting before and during the Class Period, Costco has mailed coupons monthly to members in coupon booklets whose contents are standard nationwide. The coupon booklets include a number of coupons whose forms, method of use and related descriptions and disclosures have changed over time since before and during the Class Period.

### A.   Costco's Coupon Booklets Before the Class Period

24.   As relevant here, Costco's coupon booklets were distributed in two different standard formats before the beginning of the Class Period: (i) the pre-August 8, 2013 format; and (ii) the format effective on and after August 8, 2013 until the beginning of the Class Period.

25.   For example, the coupon booklet valid for the period March 7-31, 2013, was typical of the earlier format, and included coupons with different forms and methods of use and related descriptions and disclosures in the coupon booklets:

(a)   A number of the coupons, eight to ten to a page, were one-sided, stated "INSTANT SAVINGS" and "NO COUPON NECESSARY" at the top of the coupon, with "$[X] OFF" and any applicable quantity limit for the pictured product below. These coupons also included in smaller print immediately below the "INSTANT SAVINGS" and "NO COUPON NECESSARY" notation an asterisked message in italics stating "*See inside cover for terms and conditions."* The coupons also included a circular picture of a scissors with a line through it further confirming that the coupons did not need to be clipped or presented at checkout to obtain the prescribed price reduction. A small number of "Instant Savings" coupons for electronics and certain products also showed a "Warehouse Price" of $[X], an "Instant Savings" line immediately below showing the price reduction, and below that a line called "**YOUR COST**" in bold font with the reduced price also in bold font. None of the "Instant Savings" coupons indicated that they were "manufacturers' coupons" and that the price reduction was the result of a "manufacturer's reimbursement" to Costco.

(b)   A number of other coupons, generally grouped together eight to ten on a series of contiguous pages, were expressly identified as a "MANUFACTURER'S

COUPON" either on the front or the back, and on the front stated "$[X] OFF with

coupon" and any applicable quantity limit for the pictured product. These coupons also

stated immediately after the "MANUFACTURER'S COUPON" notation that the

"[o]riginal coupon must be presented at checkout." These "manufacturers' coupons"

actually had to be clipped from the coupon booklet and presented at checkout to obtain

the prescribed price reduction.

> (c)     Other coupons stated "ONLINE-ONLY OFFER," and generally showed

"OFF: -$[X]" from the "Online Price" and the reduced price, described as "YOUR

COST" for the pictured product. These coupons did not show that they were

"manufacturers' coupons" and that the reduced price was the result of a "manufacturer's

reimbursement" to Costco.

26.     The March 7-31, 2013 coupon booklet also included certain related descriptions

and disclosures regarding the coupons that were not on the coupons:

> (a)     One disclosure in a separate paragraph inside the front cover stated: "The

coupons in this Booklet are Manufacturers' coupons. When redeemed, state sales tax may

be due on the pre-discounted price. These taxes, if any, are in addition to the amount you

are paying for the product."

> (b)     Another disclosure on the same page of the coupon booklet inside the

front cover included the standard terms and conditions:

>> The instant savings in this booklet are Manufacturers' savings. Valid at all
>> U.S. Costco warehouses. **Not valid at Costco Business Centers**
>> (emphasis in original). May not be combined with any other offer or
>> coupon. Selection and pricing may vary. No cash redemption value. State
>> and local laws may require sales tax to be charged on the pre-discounted
>> price if the product is subject to sales tax. These taxes, if any, are in
>> addition to the amount that you are paying for the product. Not all items
>> are available at all locations. Offer limited to inventory available from

manufacturer. Item limits shown on the instant savings are per household during the dates listed. You must be a current Costco member. A rain check may be issued if the promotional item is out of stock during the term of the promotion.

(c)     The coupon booklet included an additional disclosure for the "ONLINE-ONLY OFFERS" in small print at the bottom of one of the pages with these coupons, stating in relevant part:

> Price and availability subject to change without notice. An additional shipping and handling charge may apply. See product page on Costco.com for details. *Most online coupons at Costco.com are manufacturers' coupons.* State sales tax may be due on the pre-discounted price of the item when purchased using an online coupon. These taxes, if any, are in addition to the amount that you are paying for the product. These coupons cannot be combined with any other discount, coupon or promotional event. … (emphasis added)

27.     The format of the coupon booklet, including the forms and methods of use of the coupons and related descriptions and disclosures, changed materially for coupon booklets effective on and after August 8, 2013. The coupon booklet valid August 8-September 1, 2013 included the following changes:

(a)     In large print the front cover of the coupon booklet announced: "NEW No more clipping coupons!" and "Streamlined Savings."

(b)     Inside the front cover was a scannable "Master Bar Code" and instructions to "[b]ring this savings book or the Costco app on your smartphone when you visit Costco and present it to the cashier. Additional books will not be available at the warehouse."

(c)     The next page of the booklet essentially repeated the instructions on the inside front cover, while again announcing in large letters "Streamlined Savings! No

more clipping coupons." This page also included additional scannable bar codes for select products including a particular brand of tire, contact lenses and children's eyewear.

(d)     The vast majority of the coupons in the booklet, generally eight to ten on a page, were one sided, and stated only "$[X] OFF" and any applicable quantity limit for the pictured product. These coupons did not include any reference to "Instant Savings" at the top of the coupon, and the circular picture of a scissors with a line through it had been eliminated from the booklet. Some of the coupons for electronics and certain products, however, also showed a "Warehouse Price" of $[X], an "Instant Savings" line immediately below showing the price reduction, and below that a line called "**YOUR COST**" in bold font with the reduced price also in bold font. None of these coupons indicated that they were "manufacturers' coupons" and that the reduced price was the result of a "manufacturer's reimbursement" to Costco.

(e)     Interspersed throughout the coupon booklet were coupons in the same format just described, but which also included a blue arrow pointing at the price and stating "Book Or App Required." The August 8-September 1, 2013 coupon booklet included 18 of these coupons, although their number varied and tended to decrease in subsequent booklets. These coupons did not show that they were "manufacturers' coupons" and that the reduced price was the result of a "manufacturer's reimbursement" to Costco.

(f)     As with the earlier coupon booklets, this new coupon booklet also included other coupons that stated "ONLINE-ONLY OFFER," and generally showed "OFF: -$[X]" from the "Online Price," and the reduced price described as "**YOUR COST**" for the pictured product both in bold font. These coupons did not show that they

were "manufacturers' coupons" and that the reduced price was the result of a
"manufacturer's reimbursement" to Costco.

28.     The August 8-September 1, 2013 coupon booklet also included certain related
descriptions and disclosures regarding the coupons that were not on the coupons, and they were
also materially different than the disclosures in the prior coupon booklet format in important
ways relevant to Plaintiff's claims:

(a)     Unlike the prior format, there was no statement in the booklet that "[t]he
coupons in this Booklet are Manufacturers' coupons."

(b)      There was no statement in the terms and conditions that "The instant
savings in this booklet are Manufacturers' savings." Instead the terms and conditions
inside the front cover now stated:

> **Terms and Conditions --** Valid at all U.S. Costco warehouses during the
> promotion dates listed (see dates below). **Not valid at Costco Business
> Centers.** Item limits per household may apply and are indicated on the
> offer. Offer limited to inventory available from supplier. Not all items are
> available at all locations; selection and pricing may vary. A rain check
> may be issued if the promotional item is out of stock during the term of
> the promotion. When redeemed, state and local laws may require sales tax
> to be charged on the pre-discounted price. These taxes, if any, are in
> addition to the amount that you are paying for the product. May not be
> combined with any other offer or coupon. No cash redemption value.
> Nontransferable. (emphasis in original)[2]

(c)     As with the prior coupon booklet format, the revised format included an
additional disclosure for the "ONLINE-ONLY OFFERS" in small print at the bottom of
one of the pages with these coupons, stating in relevant part:

> Price and availability subject to change without notice. An additional
> shipping and handling charge may apply. See product page on Costco.com
> for details. *Most online coupons at Costco.com are manufacturers'
> coupons.* State sales tax may be due on the pre-discounted price of the

---

[2]  "Not valid at Costco Business Centers" was in bold font in the August 8-September 1, 2013 coupon book, but not after.

item when purchased using an online coupon. These taxes, if any, are in addition to the amount that you are paying for the product. These coupons cannot be combined with any other discount, coupon or promotional event. … (emphasis added)

29.     Beginning with the coupon booklet valid October 3-27, 2013, an "Instant Savings" notation in small print was again included for many of the coupons immediately above the "$[X] OFF" and any applicable quantity limit for the pictured product. However, unlike the pre-August, 2013 format, there was no asterisked message below the "Instant Savings" notation stating "*See inside cover for terms and conditions.*" An "Instant Savings" notation was not added for the limited number of coupons that included a blue arrow pointing at the price and stating "Book Or App Required," or the "ONLINE-ONLY OFFER" coupons.

30.     No other changes were made to the format of the coupon booklets prior to the beginning of the Class Period. As with the August 8-September 1, 2013 coupon booklet, the coupon booklets did not include any reference to "Manufacturer's coupon" for the coupons that were not "ONLINE-ONLY OFFERS," and the coupon booklets did not include any statement that "[t]he instant savings in this booklet are Manufacturers' savings" for the coupons that included an "Instant Savings" notation. And the coupons themselves did not show that they were "manufacturers' coupons" and that the reduced price was the result of a "manufacturer's reimbursement" to Costco.

**B.     Costco's Coupon Booklets During the Class Period**

31.     At the beginning of the Class Period, the coupon booklets were in the same format as described above for the coupon booklet valid October 3-27, 2013. This includes the fact that the coupon booklets did not include any reference to "Manufacturer's coupon" for the coupons that were not "ONLINE-ONLY OFFERS," and that the coupon booklets did not include any statement that "[t]he instant savings in this booklet are Manufacturers' savings" for the

coupons that included an "Instant Savings" notation. And the coupons themselves did not show that they were "manufacturers' coupons" and that the reduced price was the result of a "manufacturer's reimbursement" to Costco.

32.     The format of the coupon booklet, including the forms and methods of use of the coupons and related descriptions and disclosures changed slightly for coupon booklets valid on and after May 8, 2014, including coupons effective during the Class Period:

(a)     Beginning with the coupon booklet valid May 8-June 1, 2014, Costco eliminated the limited number of coupons with the blue arrow pointing at the price and stating "Book Or App Required." Thus, with the exception of certain special department items like tires, glasses and ink refills, a customer did not need the coupon booklet or app to get the price reduction on any items, which was applied automatically at checkout without the need to physically present the booklet and the coupons.

(b)     As with the pre-May 8, 2014 coupon booklet format, the coupon booklets did not include any reference to "Manufacturer's coupon" for the coupons that were not "ONLINE-ONLY OFFERS," and the coupon booklets did not include any statement that "[t]he instant savings in this booklet are Manufacturers' savings" for the coupons that included an "Instant Savings" notation. And the coupons themselves did not show that they were "manufacturers' coupons" and that the reduced price was the result of a "manufacturer's reimbursement" to Costco.

(c)     As with the pre-May 8, 2014 coupon booklet format, the "ONLINE-ONLY OFFER" coupons were in the same format and included the same disclosures, including the statement that "[m]ost online coupons at Costco.com are manufacturers' coupons."

16

(d)     The "Terms and Conditions" on the inside front cover were the same as for the pre-May 8, 2014 coupon booklets.

33.     After the changes were made in the May 8-June 1, 2014 coupon booklet, there have been only two other changes of note:

(a)     First, for the coupon booklets valid May 5-29, 2016 and after, the "Instant Savings" notation that had been added to the coupons in the October 3-27, 2013 coupon booklet described above was again eliminated. Some of the coupons for electronics and certain products did still show a "Warehouse Price" of $[X], an "Instant Savings" line immediately below showing the price reduction, and below that a line called "**YOUR COST**" in bold font with the reduced price also in bold font. However, the coupon booklets did not include any reference to "Manufacturer's coupon" for the coupons that were not "ONLINE-ONLY OFFERS," and the coupon booklets did not include any statement that "[t]he instant savings in this booklet are Manufacturers' savings" for the coupons that included an "Instant Savings" notation. And the coupons themselves did not show that they were "manufacturers' coupons" and that the reduced price was the result of a "manufacturer's reimbursement" to Costco.

(b)     Second, for the coupon booklets valid July 7-31, 2016 and after, there was a minor, not material, addition to the Terms and Conditions set out in the coupon booklets, which is italicized for ease of identification:

> **Terms and Conditions --** Valid at all U.S. Costco warehouses during the promotion dates listed (see dates below). Not valid at Costco Business Centers. Item limits per household may apply and are indicated on the offer. *Quantity limits not applicable where prohibited by law.* Offer limited to inventory available from supplier. Not all items are available at all locations; selection and pricing may vary. A rain check may be issued if the promotional item is out of stock during the term of the promotion. When redeemed, state and local laws may require sales tax to be charged

on the pre-discounted price. These taxes, if any, are in addition to the amount that you are paying for the product. May not be combined with any other offer or coupon. No cash redemption value. Nontransferable. (emphasis added)[3]

## II. Costco's Standard Form Receipt Evidencing The Shifting Of Its Sales Tax Liability To Its Customers

34.     The Costco receipt issued to customers for warehouse purchases is produced in a standard, computer generated, structured data format. Generally, for each item purchased, the receipt includes a line that lists the assigned identifying item number, a brief textual description of the product such as a name abbreviation, and the full price.

35.     For taxable items, the receipt includes a letter code to the right of the price which depends on the rate at which the Sales Tax is charged. For example, an "A" to the right of the price indicates that Sales Tax is charged at the full rate imposed by New York—for items including but not limited to household cleaning and paper products, home goods like sheets and towels, and taxable beverages like beer and soft drinks. An "F" to the right of the price is assigned to items of clothing, which if priced at less than $110 per item, are exempt from New York State Sales Tax but may still be subject to county sales tax.

36.     Toward the bottom of the receipt below the total amount paid is an entry for the total sales tax charged on all of the taxable items at each individual rate. The receipt shows an "A" for fully taxable items, the rate charged, and the total sales tax charged, which includes but does not separately break out both the New York State Sales Tax and additional sales tax imposed by counties. New York State Sales Tax is imposed at the rate of 4% on the full price of the taxable items. The receipt shows an "F" for clothing, the rate charged, and the total county sales tax charged.

---

[3] The coupon booklet valid June 1-25, 2017 did not include the "Terms and Conditions" anywhere in the booklet. However, the "Terms and Conditions" were included again in the most recent coupon booklet valid June 29-July 23, 2017.

37.     For items purchased involving coupon price reductions, the coupon number, generally the notation "CPN/[Item number]" and the amount of the coupon's price reduction are listed on a line immediately below the line for the item whose price is reduced by that coupon.

38.     Only by manually totaling the full price of all "A" taxable items on the receipt and applying the stated sales tax rate shown on the receipt can customers determine that Costco has charged Sales Tax on the full price rather than the reduced price of purchased items involving the coupons. And even then, the customers would have to subtract the total coupon-related price reductions for all "A" taxable items to calculate the amount of Costco's Sales Tax liability that Costco has illegally charged the customers on the full price rather than the reduced price of their coupon-related warehouse purchases subject to Sales Tax, and Costco's liability for Sales Tax under § 526.5(c)(4) that it has illegally shifted its to its New York customers. By contrast, all of this information and the related computations for all New York customers can be derived from the structured data that resides and is maintained in Costco's computer systems.

III.    **Costco's Coupon-Related Sales Tax Practices In Other States**

39.     Costco does not charge sales tax on the full price of items in its coupon booklets in Connecticut, Massachusetts, Missouri, Pennsylvania and Texas, but only the reduced price, because the tax laws of those states provide that the sales tax should be charged on the reduced price for coupon-related sales regardless of whether the coupons are "manufacturers' coupons."

40.     Upon information and belief, Costco employs individuals who analyze the coupon-related sales tax laws of each state to determine whether sales tax should be charged on the full or reduced price for sales involving "manufacturers' coupons." Thus, Costco is fully aware that it is liable under New York Tax Law for the Sales Tax on the difference between the full price and the reduced price of the items in its coupon booklets purchased by customers in its

New York warehouses that are subject to Sales Tax, and that its customers are only required to

pay Sales Tax on the reduced price, because its store-issued manufacturers' coupons do not

indicate "by 'mfr' or some other code" that they are "manufacturers' coupons," and do not

disclose that the reduced price is the result of a "manufacturer's reimbursement" to Costco.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action, individually and as a class action under Fed. R. Civ. P.

23(a) and (b)(3), on behalf of the following class:

> All Costco customers who, for the period beginning three years prior to the
> commencement of this action and continuing up to and including the present (the
> "Class Period"), paid New York State Sales Tax to Costco for their purchases at
> Costco's New York warehouses on the full price rather than the reduced price of
> taxable items when the price reduction was based on a coupon issued by Costco in
> its monthly coupon booklet (the "Class"). Excluded from the Class are Costco and
> Costco's directors, officers, parents, affiliates, subsidiaries and successors.

42.     Plaintiff and the Class satisfy the requirements for class certification under Fed.

R. Civ. P. 23(a) and 23(b)(3).

43.     The members of the Class are so numerous that joinder of all members is

impracticable, as required by Fed. R. Civ. P. 23(a)(1). Although the number of members of the

Class is not precisely known to Plaintiff at this time and can be determined only from appropriate

discovery, it is reasonably estimated based on the 18 Costco warehouses in New York State and

the average number of members and cardholders per warehouse worldwide as disclosed in

Costco's Form 10-K that the Class includes many hundreds of thousands and probably in excess

of one million members.

44.     Common questions of law and fact exist as to all members of the Class, as

required by Rule 23(a)(2), including the following:

(a)     Whether Costco has illegally charged Plaintiff and the members of the Class Sales Tax on the full price rather than the reduced price of their coupon-related warehouse purchases subject to Sales Tax and has illegally shifted its liability for Sales Tax under § 526.5(c)(4) to them;

(b)     Whether Plaintiff and the Class are entitled to assert, under NYTL § 1139 and 20 NYCRR §§ 534.2 and 534.8 for Costco's violations of § 526.5(c)(4), an implied private right of action requiring Costco to repay to Plaintiff and the Class the amount of its Sales Tax liability that Costco has illegally shifted to and collected from them;

(c)     Whether Costco has violated GBL § 349 by, among other things (i) Costco's failure to indicate that its coupons are "manufacturers' coupons" and to disclose that the reduced price of taxable items purchased is the result of a "manufacturer's reimbursement" to Costco, (ii) Costco's illegal shifting of its liability for Sales Tax under § 526.5(c)(4) to the Class, and (iii) the resulting illegal hidden price increase imposed by Costco on the Class; and

(d)     The appropriate measure of damages and other amounts and relief awardable under the NYTL and its prescribed Sales Tax regulations, and under GBL § 349.

45.     Plaintiff is a Costco customer who, during the Class Period, has paid New York State Sales Tax to Costco for his purchases at a Costco New York warehouse on the full price rather than the reduced price of taxable items when the price reduction was based on a coupon issued by Costco in its monthly coupon booklet, and thus is a member of the Class he seeks to represent. Plaintiff's claims are typical of the claims of the members of the Class, as required under Fed. R. Civ. P. 23(a)(3). The harm suffered by Plaintiff and all other members of the Class

was and is caused by the same conduct, *viz.,* Costco's illegal shifting of its liability for Sales Tax under § 526.5(c)(4) to the Class.

46.     Plaintiff will fairly and adequately represent and protect the interests of the Class, as required under Fed. R. Civ. P. 23(a)(4). Plaintiff has no interests antagonistic to or in conflict with the Class, and Plaintiff has retained competent counsel with extensive experience in consumer and other types of class actions involving, among other things, deceptive consumer acts and practices regarding taxes under the New York Tax Law, to further ensure the protection of those interests and who intends to prosecute this action vigorously.

47.     The Class satisfies the requirements of Rule 23(b)(3), because:

(a)     The common questions under Rule 23(a)(2) predominate over any questions that may affect individual Class members, particularly in light of the substantial uniformity of the relevant documents and practices among all Class members.

(b)     The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the Sales Tax charged to individual members of the Class is not substantial and the monetary damages suffered by those Class members individually are small, the expense and burden of individual litigation make it impossible for individual members of the Class to seek redress for Costco's illegal and deceptive acts and practices. If class treatment of these claims is not available, Costco will be able to retain millions of dollars of illegally and deceptively collected Sales Tax, and will otherwise escape liability for its wrongdoing in connection with its Sales Tax practices.

(c)     The Class is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation. Information concerning the Class members and the amount of Sales Tax Costco has charged and collected from them is found in

structured data readily available from Costco's computerized books and records. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

## FIRST CLAIM FOR RELIEF
### (Under NYTL § 1139 and 20 NYCRR §§ 534.2 and 534.8 for Violations of § 526.5(c)(4))

48.     Plaintiff realleges and reincorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth verbatim.

49.     Costco has violated § 526.5(c)(4) by charging and collecting from Plaintiff and the Class Sales Tax for their purchases at Costco's New York warehouses on the full price rather than the reduced price of taxable items when the price reduction was based on a coupon issued by Costco in its monthly coupon booklet, thereby illegally shifting its liability for Sales Tax on the difference between the full price and the reduced price to Plaintiff and the Class.

50.     Plaintiff and the Class have been injured by Costco's illegal Sales Tax practices.

51.     Based on the facts of this case and under applicable New York law, Plaintiff is entitled to assert a private right of action individually and on behalf of the Class under NYTL § 1139 and 20 NYCRR §§ 534.2 and 534.8 in connection with Costco's violations of § 526.5(c)(4) because: (i) Plaintiff and the Class are the Costco customers entitled to repayment by Costco of the illegally collected Sales Tax for whose benefit § 1139 and 20 NYCRR §§ 534.2 and 534.8 were promulgated; (ii) recognition of the private right of action will promote the legislative purpose of ensuring that the person liable for the Sales Tax pays that Sales Tax to New York; and (iii) recognition of the private right of action is consistent with the existing legislative scheme and will provide an effective enforcement mechanism for the existing  prescribed remedy, as confirmed by *In re New Cingular Wireless PCS LLC*.

52.     Costco is liable for, and should be required to repay to Plaintiff and the Class, the Sales Tax that Costco has illegally shifted to and collected from them, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Violations of GBL § 349)

53.     Plaintiff realleges and reincorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth verbatim.

54.     In determining what types of conduct may be deceptive practices under GBL § 349, the courts of New York have applied an objective standard which asks whether the "representation or omission [is] likely to mislead a reasonable consumer acting reasonably under the circumstances," while taking into account *not only* the impact on the "average consumer" *but also* on "the vast multitude which the statutes were enacted to safeguard ... including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions."

55.     Costco's Sales Tax practices described in this Complaint constitute deceptive acts or practices in the conduct of business, trade or commerce or in the furnishing of services in this State which affects the public interest under GBL § 349.

56.     Plaintiff and the Class have been injured by Costco's conduct.

57.     Plaintiff and the Class each are entitled in this federal class action to recover the greater of their actual damages or the prescribed $50 statutory damages under GBL § 349, as well as other amounts and relief awardable under § 349, including but not limited to their reasonable attorney's fees.

58.     Additionally, because Costco has willfully or knowingly violated § 349, Plaintiff and the Class each are entitled to recover an amount not to exceed three times their actual damages up to $1,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief, and judgment in his and their favor, as follows:

A.      Certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), with Plaintiff certified as representative of the Class and his attorney appointed as counsel for the Class;

B.      Declaring the Costco's Sales Tax practices violate the rights of Plaintiff and the Class under § 526.5(c)(4), and that Plaintiff and the Class are entitled to assert a private right of action under NYTL § 1139 and 20 NYCRR §§ 534.2 and 534.8 to require Costco to repay to Plaintiff and the Class the Sales Tax that Costco is liable for and has illegally shifted to and collected from them;

C.      Declaring that Costco's Sales Tax practices violate the rights of Plaintiff and the Class under GBL § 349;

D.      Awarding to Plaintiff and the Class compensatory and/or actual and/or minimum statutory damages and other amounts allowable under New York law, in an amount to be determined at trial, and including an amount not to exceed three times their actual damages up to $1,000;

E.      Awarding the costs and disbursements incurred in connection with this action, including reasonable attorney's fees and expenses;

F.      Awarding pre- and post-judgment interest; and

G.      Granting such other and further relief as the Court deems just and proper

Dated: June 26, 2017

/s/ William R. Weinstein
    William R. Weinstein
LAW OFFICES OF WILLIAM R. WEINSTEIN
199 Main Street, 4th Floor
White Plains, New York 10601
(914) 997-2205
wrw@wweinsteinlaw.com

ATTORNEY FOR PLAINTIFF
AND THE CLASS