UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK A. GUTERMAN, *individually and on behalf of all others similarly situated*,

Plaintiff,

-v-

COSTCO WHOLESALE CORPORATION,

Defendant.

No. 17-CV-4812 (KMK)

OPINION & ORDER

Appearances:

William Robert Weinstein, Esq.
Law Offices of William R. Weisnstein
White Plains, NY
*Counsel for Plaintiff*

James Daniel Arden, Esq.
Sidley Austin LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Plaintiff Mark A. Guterman ("Plaintiff"), individually and on behalf of others similarly situated, brings this putative class action against Costco Wholesale Corporation ("Costco" or "Defendant"), alleging a private right of action under New York Tax Law § 1139, and asserting claims for violations of New York General Business Law ("GBL") § 349 and for unjust enrichment. (*See* Second Am. Compl. ("SAC") (Dkt. No. 20).) Plaintiff alleges that Costco has illegally charged its New York customers sales tax on the full price rather than the reduced price of their coupon-related warehouse purchases, and thus required its New York customers to reimburse Costco for its liability for sales tax on the difference between the reduced price and the full price. (*Id.* ¶¶ 6–7.) Before the Court is Costco's Motion To Dismiss the Second Amended

Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion"). (*See* Notice of Motion (Dkt. No. 16).) For the reasons to follow, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from the Second Amended Complaint ("SAC") and are taken as true for the purpose of resolving the instant Motion. (SAC.)

Plaintiff, a Costco customer, alleges that he improperly paid sales tax to Costco at a New York warehouse on the full price, rather than the reduced price, of taxable items purchased, when the price reduction was based on a coupon issued by Costco in its monthly coupon booklet that was not labeled as a manufacturer's coupon. (*Id.* ¶¶ 6–7.) Plaintiff brings this Action individually and on behalf of the following class:

> All Costco customers who, for the period beginning three years prior to the commencement of this action and continuing up to and including the present (the "Class Period"), paid New York State Sales Tax to Costco for their purchases at Costco's New York warehouses on the full price rather than the reduced price of taxable items when the price reduction was based on a coupon issued by Costco in its monthly coupon booklet (the "Class"). Excluded from the Class are Costco and Costco's directors, officers, parents, affiliates, subsidiaries and successors.

(*Id.* ¶ 19.) According to Plaintiff, Costco's monthly coupon booklets valid during the Class Period did not indicate "by 'mfr' or some other code" that they are "manufacturers' coupons," and did not disclose that the reduced price is the result of a "manufacturer's reimbursement" to Costco. (*Id.* ¶ 6.) Plaintiff thus avers that under New York Tax Law, Costco's customers making coupon-related purchases subject to sales tax at Costco's New York warehouses were liable only for the sales tax on the reduced price, and Costco itself is liable for the sales tax on

the difference between the reduced price and the full price before the price reduction. (*Id.*)[1]

Plaintiff asserts an implied private right of action under New York Tax Law § 1139(a)(ii) and New York Comp. Codes R. & Regs. ("NYCRR") tit. 20, §§ 526.5(c)(4), 534.2, and 534.8 to require Costco to repay to Plaintiff and Costco's other New York customers the amount of its sales tax liability that Costco has illegally required them to reimburse Costco for. (*Id.* ¶ 19.) Plaintiff also brings claims for violation of GBL § 349 and for unjust enrichment. (*Id.* ¶¶ 20–21.)

### 1. Costco's Coupon Booklets

Plaintiff alleges that Costco distributes standard form, monthly coupon mailers ("coupon booklets"), which include store-issued coupons entitling Costco customers to reduced prices for their purchases in Costco's warehouse facilities of the products identified on the coupons. (*Id.* ¶ 3.) Each coupon booklet is valid for a prescribed date range. (*Id.*)[2] The form of these booklets

---

[1] Regulations govern the computation of "receipts" subject to New York sales tax imposed under New York Tax Law § 1105 when coupons are used in connection with the purchase of items subject to sales tax. *See* N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 20, § 526.5. Section 526.5(c) regulates different factual variations regarding the sales tax "due" when manufacturers' coupons are used, and as relevant here, § 526.5(c)(4) provides that:
> Where a store issues a coupon involving manufacturer's reimbursement, but does not disclose that fact to the purchaser on the coupon or in the advertisement, the vendor will collect from the purchaser only the tax due on the reduced price, but will be required to pay the tax on the entire receipt—the amount of the price and the reimbursement received from the manufacturer or distributor.

*Id.*

[2] The Costco website at the relevant time included a webpage entitled "Warehouse Coupon Offers" with a link to "View Warehouse Coupons" from the current coupon booklet. (SAC ¶ 49.) The webpage also encouraged Costco's customers to "Download the new COSTCO APP for easy coupon redemption!" (*Id.*) Costco's website continued to feature its "Warehouse Coupon Offers" page for its coupon booklets valid through December 24, 2017. (*Id.*) According to Plaintiff, nothing on the webpage disclosed that the coupons pictured were "manufacturers' coupons" and that the reduced price was the result of a "manufacturer's reimbursement" to Costco. (*Id.*)

3

has changed over the years, and Plaintiff describes each of these changes in detail in the SAC. (*See id.* ¶¶ 4–6; 27–37.)

Prior to August 8, 2013, the coupon booklets included store-issued coupons providing reduced prices for customers' purchases in Costco's warehouses on certain products. (*Id.* ¶ 4.) Generally, the offers were identified on the coupon itself or elsewhere in the booklet as a "manufacturer's coupon" or as providing "manufacturer's savings." (*Id.*) More specifically, the coupon booklets included offers marked as "instant savings" and "no coupon necessary," with an asterisk to "[s]ee inside cover for terms and conditions." (*Id.* ¶ 29(a).)[3] Other offers were expressly identified as a "manufacturer's coupon" and noted that the "[o]riginal coupon must be presented at checkout." (*Id.* ¶ 29(b).) Finally, there were offers marked as "online-only offer." (*Id.* ¶ 29(c).)

Additionally, the coupon booklet included "terms and conditions" and disclosures regarding the coupons and tax liability, stating "[t]he coupons in this Booklet are Manufacturers' coupons. When redeemed, state sales tax may be due on the pre-discounted price. These taxes, if any, are in addition to the amount you are paying for the product," (*id.* ¶ 30(a)), and "[s]tate and local laws may require sales tax to be charged on the pre-discounted price if the product is subject to sales tax. These taxes, if any, are in addition to the amount that you are paying for the product," (*id.* ¶ 30(b)). A separate disclosure, for "online-only offers," stated that "[m]ost online coupons at Costco.com are manufacturers' coupons. State sales tax may be due on the pre-discounted price of the item when purchased using an online coupon." (*Id.* ¶ 30(c).)

---

[3] Occasional phrases in the coupon booklets are in all capital letters or italicized. (*See, e.g.*, *id.* ¶ 29.) For ease of readability, the Court reproduces these phrases in unitalicized, lower case letters.

However, after August 8, 2013, Costco's coupon booklets changed.  (*Id.* ¶¶ 5, 31.)  Most notably, the booklets no longer contained any indication that the offers not marked "online-only" were "manufacturers' coupons" and that the reduced price was the result of a "manufacturer's reimbursement" to Costco.  (*Id.* ¶ 5.)  Additionally, the coupon booklet provided a new form for getting discounts, noting: "NEW No more clipping coupons!" and "Streamlined Savings!  No more clipping coupons."  (*Id.* ¶¶ 31(a), (c).)  Instead, the front cover had a scannable "Master Bar Code," and customers were instructed to "[b]ring this savings book or the Costco app on your smartphone when you visit Costco and present it to the cashier.  Additional books will not be available at the warehouse."  (*Id.* ¶ 31(b).)  Most of the offers had a picture of the product with the dollar amount discounted listed (i.e. "$[X] off"); however, some of the offers had an equation with the original price, then a line item underneath labeled "Instant Savings" showing the price reduction, and a line below that listing the customer's reduced price labeled "your cost."  (*Id.* ¶ 31(d).)  Some of those offers also had a blue arrow pointing at the price and stating "Book Or App Required."  (*Id.* ¶ 31(e).)  Again, there were offers marked as "online-only offer." (*Id.* ¶ 31(f).)

The post-August 8, 2013 coupon booklet also included terms and conditions and disclosures regarding the coupons and tax liability.  (*Id.* ¶¶ 32.)  However for the offers *not* marked "online-only," the language stating the offers were manufacturers' coupons was removed.  (*Id.* ¶¶ 32(a)–(b).)  The new language in the terms and conditions said: "When redeemed, state and local laws may require sales tax to be charged on the pre-discounted price." (*Id.* ¶ 32(b).)  As with the prior offers, a separate disclosure for "online-only offers" stated that

"[m]ost online coupons at Costco.com are manufacturers' coupons. State sales tax may be due on the pre-discounted price of the item when purchased using an online coupon." (*Id.* ¶ 32(c).)[4]

Beginning October 3, 2013, the coupon booklets also included an "Instant Savings" label on the coupons above the advertised dollar amount discounted. (*Id.* ¶ 33.) However, unlike the pre-August 8, 2013 format, there was no asterisked message below the "Instant Savings" notation stating "[s]ee inside cover for terms and conditions." (*Id.*) The "instant savings" notation was not added to the coupons that included a blue arrow pointing at the price and stating "Book Or App Required," or to the "online-only offer" coupons. (*Id.*) According to Plaintiff, no other changes were made to the coupon booklets prior to the beginning of the class period. (*Id.* ¶ 34.)

The format of the coupon booklets changed again beginning May 8, 2014. (*Id.* ¶ 36.) The coupons with the blue arrow pointing at the price and stating "Book Or App Required" were eliminated. (*Id.* ¶ 36(a).) Thus, except for certain special items like tires, glasses, and ink refills, customers no longer needed to bring the coupon booklet or app to get the price reduction. (*Id.*) Instead, the price reduction was applied automatically at checkout. (*Id.*) As with the post-August 8, 2013 coupon booklets, the offers not marked "online-only" had no language stating the offers were "manufacturers' coupons" or involved a "manufacturer's reimbursement." (*Id.* ¶ 36(b).) And, the "online-only offers" continued to have a separate disclosure stating that "[m]ost online coupons at Costco.com are manufacturers' coupons." (*Id.* ¶ 36(c).)

---

[4] Plaintiff alleges that during the Class Period, the Costco website also included a webpage under a "Customer Service" grouping entitled "Does Costco accept manufacturer's coupons?" (*Id.* ¶ 50.) Costco's answer to this question on the webpage was: "Costco Wholesale does not accept general manufacturer coupons. We have our own coupons and promotional offers, which are distributed to members in the mail and at our locations at various times throughout the year." (*Id.*)

Beginning May 5, 2016, the "instant savings" notation added to the offers starting October 3, 2013 was eliminated. (*Id.* ¶ 37(a).) Some of the coupons for electronics and certain other products still depicted an equation showing the "Warehouse Price" on one line, a line stating "Instant Savings" with the amount of the price reduction below that, and a line stating "your cost" with the reduced price below that. (*Id.*) Again, offers not marked "online-only" did not include any reference to "manufacturers' coupons" or a "manufacturer's reimbursement." (*Id.*)[5]

### 2. Costco's Sales Receipts

Costco issues customers receipts for their purchases in a standard, computer-generated, structured data format that lists the assigned identifying item number, a brief textual description of the product such as a name abbreviation, and the full price. (*Id.* ¶ 38.)

For taxable items, the receipt includes a letter code to the right of the price which corresponds with the rate at which the sales tax is charged. (*Id.* ¶ 39.) For example, an "A" indicates that sales tax was charged at the full rate imposed by New York, 4 percent, while an "F" indicates that the product is an item of clothing, which, if priced at less than $110 per item, is exempt from New York state sales tax but may still be subject to county sales tax. (*Id.* ¶¶ 39–40.) Toward the bottom of the receipt below the total amount paid is an entry for the total sales tax charged on all of the taxable items at each individual rate. (*Id.* ¶ 40.) The receipt shows an "A" for fully taxable items, the rate charged, and the total sales tax charged, which includes but does not separately break out both the New York state sales tax and any additional sales tax

---

[5] The coupon booklet valid June 1–25, 2017 did not include the "Terms and Conditions" anywhere in the booklet. (SAC ¶ 37 n.2.) The "Terms and Conditions" were included again in the next coupon booklet valid June 29–July 23, 2017. (*Id.*) That coupon booklet, however, eliminated the reference to "manufacturers' coupons" for the coupons that were "online-only offers." (*Id.*)

7

imposed by counties. (*Id.*) The receipt shows an "F" for clothing, the rate charged, and the total county sales tax charged. (*Id.*) Plaintiff alleges that only by manually adding the full price of all "A" taxable items on the receipt and applying the stated sales tax rate shown on the receipt can customers determine that Costco has charged sales tax on the full price rather than the reduced price of purchased items involving the coupons. (*Id.* ¶ 42.) And even then, the customers would have to subtract the total coupon related price reductions for all "A" taxable items to calculate the amount of Costco's sales tax liability that Costco has charged the customers based on the full price, rather than the reduced price, of their coupon-related warehouse purchases subject to sales tax. (*Id.*)

For items purchased involving coupon price reductions, the coupon number, the notation "CPN/[Item number]," and the amount of the coupon's price reduction is listed on a line immediately below the line for the item whose price is reduced by that coupon. (*Id.* ¶ 41.) Additionally, the receipt also includes a line near the bottom showing the total amount of "coupons tendered." (*Id.* ¶ 48.)

### 3. Costco's SEC Filings

According to Plaintiff, Costco referred to its coupon booklets as "coupon mailers" in every Form 10-K filed with the SEC for the ten-year period beginning in 2007 through fiscal year ending August 28, 2016. (*Id.* ¶ 46.) While Costco's Form 10-K for the fiscal year ending September 3, 2017 does not use the term "coupon mailers," the audited, certified financial statements for that fiscal year state in Note 1 ("Summary of Significant Accounting Policies"), under the subheading "Receivables, Net," state that "[v]endor receivables include coupons, volume rebates and other purchase discounts." (*Id.*) Additionally, under the subheading "Vendor Consideration," Note 1 states that "[Costco] has agreements to receive funds from

vendors for coupons and a variety of other programs. These programs are evidenced by signed agreements . . . ." (*Id.*)

### 4. Costco's Taxing Practices In Other States

Plaintiff alleges that Costco does not charge sales tax on the full price of items in its coupon booklets in Connecticut, Massachusetts, Missouri, Pennsylvania, and Texas, but only the reduced price, because the tax laws of those states provide that the sales tax should be charged on the reduced price for coupon-related sales regardless of whether the coupons are "manufacturers' coupons." (*Id.* ¶ 43.) Plaintiff believes that Costco employs individuals who analyze the coupon-related sales tax laws of each state to determine whether sales tax should be charged on the full or reduced price for sales involving "manufacturers' coupons." (*Id.* ¶ 44.) Thus, Costco must have been aware that it was liable under New York Tax Law for the sales tax on the difference between the full price and the reduced price of items in its coupon booklets not marked as "manufacturers' coupons" purchased in New York. (*Id.* ¶ 45.)

### B. Procedural History

Plaintiff filed the Complaint on June 26, 2017. (Dkt. No. 1.) On July 28, 2017, Plaintiff filed the Amended Complaint. (Am. Compl. (Dkt. No. 6).) On August 9, 2017, Defendant requested a conference to discuss a proposed motion to dismiss. (Dkt. No. 9.) On August 14, 2018, Plaintiff filed his opposition to the pre-motion letter. (Dkt. No. 11.) During the pre-motion conference on October 19, 2017, the Court adopted a briefing schedule for the instnat Motion. (Dkt. No. 15.) In accordance with the Scheduling Order, Defendant filed the Motion and accompanying memorandum of law on November 17, 2017. (Notice of Motion; Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") (Dkt. No. 17).) On December 22, 2017, Plaintiff filed his opposition to Defendant's Motion, (Pl.'s Mem. of Law in Opp'n to Mot.

To Dismiss ("Pl.'s Mem.") (Dkt. No. 18)), and on January 12, 2017, Defendant filed its reply, (Def.'s Reply Mem. of Law in Supp. of Mot. To. Dismiss (Def.'s Reply Mem.") (Dkt. No. 19)).

On March 7, 2018, Plaintiff filed the SAC. (Dkt. No. 20.) Plaintiff also filed a letter on behalf of both Parties requesting that the Court consider the pending Motion to be directed at the SAC. (Letter from William R. Weinstein, Esq. to Court (Mar. 7, 2018) ("Mar. 7, 2018 Pl.'s Letter") (Dkt. No. 21).) Pursuant to a memo endorsement, the Court granted the request. (Dkt. No. 22.)

## II. Discussion

### A. Standard of Review[6]

---

[6] Defendant moves to dismiss Plaintiff's SAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that New York Tax Law § 1139 is the exclusive remedy for Plaintiff's claims. (*See* Def.'s Mem. 1, 5–6.) As one court has explained, "[s]ome courts have treated the question as jurisdictional, while others have dismissed similar claims for failure to state a claim or failure to exhaust administrative remedies." *Kupferstein v. TJX Cos., Inc.*, No. 15-CV-5881, 2017 WL 590324, at *2 n.1 (E.D.N.Y. Feb. 14, 2017). *Compare Togut v. Forever 21, Inc.*, 285 F. Supp. 3d 643, 648 (S.D.N.Y. 2018) (dismissing for lack of subject matter jurisdiction), *Estler v. Dunkin' Brands, Inc.*, No. 16-CV-932, 2016 WL 5720814, at *4 (S.D.N.Y. Oct. 3, 2016) (same), *aff'd,* 691 F. App'x 3 (2d Cir. 2017), *and Cohen v. Hertz Corp.*, No. 13-CV-1205, 2013 WL 9450421, at *3 (S.D.N.Y. Nov. 26, 2013) (same), *with Gilbert v. Home Depot, Inc.*, No. 13-CV-853S, 2014 WL 4923107, at *1 (W.D.N.Y. Sept. 30, 2014) (dismissing for failure to state a claim), *and Kupferstein v. Wakefern Food. Corp.*, No. 15-CV-5828, at 7 (E.D.N.Y. May 13, 2016) (dismissing for failure to exhaust administrative remedies). (Def.'s Mem. Ex. A (copy of unpublished *Kupferstein v. Wakefern Food. Corp.* decision).) While the Second Circuit has not resolved the issue, *see Estler*, 691 F. App'x at 5 n.1 (noting, but not deciding, the issue), the Court agrees with those courts holding that "the issue is not one of subject matter jurisdiction, but of failure to state a claim because a state 'ha[s] no power to enlarge or contract the federal *jurisdiction*,'" *Kupferstein*, 2017 WL 590324, at *2 n.1 (quoting *Grand Bahama Petroleum Co., Ltd. v. Asiatic Petroleum Corp.*, 550 F.2d 1320, 1325 (2d Cir. 1977)); *accord Beach v. Owens-Corning Fiberglas Corp.*, 728 F.2d 407, 409 (7th Cir. 1984) (same); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1315 (9th Cir. 1982) (holding "states . . . have no power to enlarge or contract the federal jurisdiction."). Thus, the Court considers Defendant's Motion under Rule 12(b)(6). The Court notes, however, that the result would be no different even if the Motion was decided under Rule 12(b)(1).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

B. Analysis

1. Plaintiff's Claims under New York Tax Law

Defendant argues Plaintiff's claim asserting a private right of action fails, because the explicit language of New York Tax Law § 1140 provides that the administrative procedures set out in § 1139 are the "exclusive remedies" for a person challenging the imposition of a tax. (Def.'s Mem. 2.) Plaintiff argues that under § 1139(a)(ii), and the related regulations, 20 NYCRR §§ 534.2 and 534.8, Costco's New York customers are entitled to obtain repayment of the sales tax collected by Costco in violation of § 526.5(c)(4) from Costco without the need to first file a refund application with the New York Tax Commission. (Pl.'s Mem. 3; SAC ¶¶ 11–15.)

New York Tax Law § 1139 dictates how a taxpayer may seek a refund for a sales tax that the taxpayer believes was "erroneously, illegally or unconstitutionally" collected:

> In the manner provided in this section the tax commission shall refund or credit any tax, penalty or interest erroneously, illegally or unconstitutionally collected . . . (i)

12

in the case of tax paid by the applicant to a person required to collect tax, within three years after the date when the tax was payable by such person to the tax commission . . . or (ii) in the case of a tax, penalty or interest paid by the applicant to the tax commission, within three years after the date when such amount was payable under this article . . . . No refund or credit shall be made to any person of tax which he collected from a customer until he shall first establish to the satisfaction of the tax commission, under such regulations as it may prescribe, that he has repaid such tax to the customer.

N.Y. Tax Law § 1139(a). New York Tax Law § 1140 mandates that the remedies described in § 1139 are exclusive:

> The remedies provided by [New York Tax Law §§ 1138 and 1139] shall be exclusive remedies available to any person for the review of tax liability imposed by this article; and no determination or proposed determination of tax or determination on any application for refund shall be enjoined or reviewed by an action for declaratory judgment, an action for money had and received, or by any action or proceeding other than a proceeding under article seventy-eight of the civil practice law and rules.

N.Y. Tax Law § 1140.[7]

The Court agrees with the other district courts in the Second Circuit holding that the administrative remedy outlined in § 1139 to refund a tax "erroneously, illegally or unconstitutionally collected or paid" is exclusive. *See, e.g.*, *Kupferstein v. TJX Cos., Inc.*, No. 15-CV-5881, 2017 WL 590324, at *2 (E.D.N.Y. Feb. 14, 2017) ("New York Tax Law § 1139

---

[7] The regulations further explain the procedure for getting a refund. For example, § 534.2(a) outlines the information required in an application for a refund. 20 NYCRR § 534.2(a)(2)(i). Under § 534.2(c)(1) "[a]ny person who has erroneously, illegally, or unconstitutionally collected any tax from a customer and remitted such tax to the Department of Taxation and Finance must repay such tax to the customer before the Department of Taxation and Finance may refund any amounts to him." § 534.2(c)(1). Section 534.8 similarly provides that "[a]ny person who has erroneously, illegally, or unconstitutionally collected a tax from a customer may, repay such tax to the customer and in turn claim a refund or credit of such tax from the Department of Taxation and Finance, provided the tax has been paid to the Department of Taxation and Finance." § 534.8(a)(2). However, it further stipulates that "[n]o refund or credit may be made to any person of tax which he collected from a customer until he shall first establish to the satisfaction of the Department of Taxation and Finance, as provided in [§] 534.2 . . . of this Part, that he has in fact repaid such tax to the customer." § 534.8(a)(3).

provides taxpayers an administrative remedy to seek a refund of any tax 'erroneously, illegally or unconstitutionally collected or paid' from the Tax Commission, and that administrative remedy for seeking a refund is exclusive."); *Estler v. Dunkin' Brands, Inc.*, No. 16-CV-932, 2016 WL 5720814, at *3 (S.D.N.Y. Oct. 3, 2016) ("[The] [p]laintiffs' claims for damages are premised on arguments that [the] [d]efendants improperly collected sales tax on prepackaged bags of coffee and fall within the exclusive remedy provided by New York General Business Law §§ 1139 & 1140."), *aff'd*, 691 F. App'x 3 (2d Cir. 2017); *Gilbert v. Home Depot*, No. 13-CV-853S, 2014 WL 4923107, at *3 (W.D.N.Y. Sept. 30, 2014) (rejecting the plaintiff's argument that § 1139(a) only applies to disputes between a taxpayer and the tax collector because it "ignores the clear language of § 1139(a)" and "*Davidson* [*v. Rochester Tel. Corp.*, 558 N.Y.S.2d 1009 (App. Div. 1990)]'s holding that allegations of a seller's improper or unauthorized collection of sales taxes must be raised in an administrative proceeding"), *appeal withdrawn* (Nov. 10, 2014); *Cohen v. Hertz Corp.*, No. 13-CV-1205, 2013 WL 9450421, at *3 (S.D.N.Y. Nov. 26, 2013) ("The administrative refund remedy provided by [§] 1139 for sales tax overcharge claims is an exclusive one."); *see also Estler*, 691 F. App'x at 6 ("New York Tax Law § 1139 makes clear that § 1140's exclusive administrative remedy is designed for precisely those cases in which a claimant alleges that a tax has been collected 'erroneously, illegally or unconstitutionally.'").[8]

---

[8] Plaintiff places much weight on the Second Circuit's statement in *Estler* that the court was not "address[ing] whether resort to this administrative remedy might ever be unnecessary if an additional fee has been fraudulently charged as a 'tax' yet not remitted to state or municipal authorities." 691 F. App'x. 6 n.2 (italics omitted). Here, Plaintiff does not allege that Costco failed to remit the tax charged on the difference between the reduced price and the full price to the state of New York. In fact, Plaintiff claims the excess funds collected from customers were remitted to the state of New York to pay Costco's own tax liability on that difference. (*See* SAC ¶ 7 ("[T]he total Sales Tax remitted by Costco to the State of New York on the full price is the correct amount, and not an overpayment of Sales Tax as might be the case in connection with the remittance by Costco of Sales Tax charged customers for items excluded from Sales Tax under New York law. Thus, Costco's liability for Sales Tax under § 526.5(c)(4) has been discharged,

The consensus view among the courts is not surprising, as the text of the statute could not be more explicit: "The remedies provided by . . . [§ 1139] *shall be exclusive* remedies available to any person for the review of tax liability imposed by this article." N.Y. Tax Law § 1140 (emphasis added). Indeed, New York state courts have similarly interpreted § 1139 to require claimants to apply for relief to the Tax Commission where sales taxes were allegedly collected in violation of the law. *See, e.g.*, *CMSG Rest. Grp., LLC v. State of N.Y.*, 40 N.Y.S.3d 412, 416 (App. Div. 2016) ("[The] plaintiffs' argument that the performances . . . were exempt from the sales taxes at issue is not properly raised in this action, due to the statute's exclusive remedy provision (Tax Law § 1140)."); *see also Davidson*, 558 N.Y.S.2d at 1011 (holding claim that collection of sales tax was "improper, unnecessary, [and] unauthorized by law" must be "raised in an administrative proceeding" (internal quotation marks omitted)). Further, "a court may review a determination by the Tax Commission only in an action pursuant to Article 78 of the New York Civil Practice Law and Rules." *Kupferstein*, 2017 WL 590324, at *2. Thus, under New York law, Costco's "'collection of [the] sales tax constitutes 'merely a ministerial act,' and since [Costco] is 'merely a tax collector and its responsibility ends once it has collected the taxes, a dissatisfied taxpayer's recourse is then against the taxing body.'" *Estler*, 2016 WL 5720814, at *2 (quoting *Cohen*, 2013 WL 9450421, at *3 (alteration omitted)); *see also Gilbert*, 2014 WL 4923107, at *4 ("[W]hether a vendor is collecting and remitting sales taxes in accordance with state law is a question that has been entrusted to the Department of Taxation in the first instance.").

---

while Costco has been fully reimbursed for its liability by the amounts illegally collected from its New York customers.").)

15

It is undisputed that Plaintiff has not sought administrative relief under § 1139. Instead, Plaintiff argues that the administrative procedures in § 1139(a)(i) are too burdensome, if not futile, and thus Plaintiff should be able to bring suit against Defendant and require it to seek the refund under § 1139(ii). (Pl.'s Mem. 9, 15.)[9] To begin, Plaintiff's suggestion that "the customer's lack of relevant information only in possession of Costco makes it impossible for the customer to satisfy the requirements to successfully apply for a refund under § 1139(a)(i)," (*id.* at 9), is belied by the fact that Plaintiff's SAC contains almost all the relevant information. The regulations require an application include: the applicant's name; the applicant's address; the applicant's vendor identification number; the time period covered; the amount of refund claimed; a full explanation of the facts on which the claim is based, including substantiation of the basis for and the amount of the claim; a certification that no part of the tax paid for which the claim is made has been refunded or credited to the applicant by the person to whom it was paid; the date of application; and signature of the applicant. 20 NYCRR § 534.2(a)(2)(i). While Costco also has this information in its possession, it would not be "impossible" for a customer to obtain the information.

Additionally, there may be no dispute that Defendant *could* have refunded the excess taxes Plaintiff and the other putative class members paid. In fact, it may even have been sound business practice for Defendant to do so. However, "Plaintiff['s] arguments that Defendant[] *may* make a refund request on behalf of [its] customers and that customers should not be required to submit refund requests because [a plaintiff does] not know to do so are irrelevant and do not

---

[9] It is unclear what refund Defendant would even seek from the Tax Commission. As Plaintiff has repeatedly alleged, Costco paid the correct amount of sales tax to the Tax Commission. The alleged error was in how much of the tax the customer should have paid. (*See, e.g.*, Pl.'s Mem. 7 ("Costco's liability for Sales Tax . . . has been discharged.").)

affect the mandatory nature of § 1139." *Estler*, 2016 WL 5720814, at *3. While Plaintiff may be right in interpreting § 1139(a)(ii) to require that Costco must repay its customers *before* seeking a refund from the Tax Commission, *see* § 1139(a) ("No refund or credit shall be made to any person of tax which he collected from a customer until he shall first establish to the satisfaction of the tax commission, under such regulations as it may prescribe, that he has repaid such tax to the customer."), nothing in § 1139 suggests that Costco *must* repay its customers after being made aware of a potentially "erroneously, illegally or unconstitutionally collected" tax.[10]

Plaintiff's attempt to get around the exclusive remedy provision by arguing there is an implied private right of action under § 1139(a)(ii) and the implementing regulations also fails. "New York appears to continue to follow the more lenient test for implying private rights of action . . . . Under New York law, the essential factors to be considered are: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 231 (2d Cir. 2006) (internal quotation marks omitted), *certified question accepted*, 846 N.E.2d 467 (N.Y. 2006), *and certified question answered*, 860 N.E.2d 713 (N.Y. 2006) (citations omitted). Even were the Court to accept Plaintiff's claims that the first two criteria are satisfied, the Court finds that a private right of action would be inconsistent with the legislative scheme. The explicit text of the statute creates

---

[10] Plaintiff's reliance on cases applying the Federal Insurance Contribution Act is misplaced. (Pl.'s Mem. 10–11.) For example, in *Atlantic Dep't Stores, Inc. v. United States*, 557 F.2d 957 (2d Cir. 1977), the Second Circuit held that an employer *could* file a refund, but *must* first repay the employee before obtaining a refund from the Government. *Id.* at 959. However, the Second Circuit did not hold that the employee could sue the employer to get a refund and bypass the procedures in the statute. *Id.*

17

an exclusive remedy, which does not include a private right of action. To imply one would run head first into the statutory scheme. *See 550 Cent. Ave. Deli Corp. v. Comm'r of Taxation & Fin.*, 591 N.Y.S.2d 590, 591–92 (App. Div. 1992) ("[W]e note that the Legislature has set forth in unambiguous terms the parameters for seeking refunds of sales and use taxes in Tax Law §§ 1138, 1139 and 1140 . . . . These provisions reflect a clear legislative intent to narrow the opportunity for administrative and court review, and further the important public policy that demands that challenges to State revenue practices be raised promptly and pursued diligently to protect the integrity of the public fisc." (citations omitted)); *Cohen*, 2013 WL 9450421, at * 3 ("Section 1140 makes it clear that the statutory administrative remedy provisions are 'exclusive . . . for the review of tax liability imposed by this [sales tax] article,' and expressly precludes other review of any 'determination or proposed determination of tax.'" (quoting N.Y. Tax Law § 1140)); *see also Estler*, 691 F. App'x at 7 ("N.Y. Tax Law §§ 1139 and 1140 explicitly foreclose legal remedies other than the mandatory administrative procedure described therein to recover improperly collected sales taxes."). Thus, Plaintiff's remedy for Defendant's allegedly illegal tax collection is an application to the Tax Commission, as outlined in § 1139(a), and not the Court. Accordingly, the Court grants Defendant's Motion To Dismiss Plaintiff's claims brought under New York Tax Law § 1139(a)(ii) and 20 NYCRR §§ 526.5(c)(4), 534.2 and 534.8. *See Holt v. Town of Stonington*, 765 F.3d 127, 130 (2d Cir. 2014) ("In the absence of exhaustion of an administrative remedy, the action must be dismissed." (alteration and internal quotation marks omitted); s*ee also Togut v. Forever 21, Inc.*, 285 F. Supp. 3d 643, 646 (S.D.N.Y. 2018) ("Where a plaintiff has failed to comply with a mandatory state-law administrative remedy, 'the action must be dismissed.'" (quoting *Estler*, 691 F. App'x at 5));

*Kupferstein*, 2017 WL 590324, at *2 ("[A] [federal district] court may not hear claims such as this of erroneously or illegally collected or paid [taxes in] New York.").[11]

### 2. Plaintiff's Claims Under New York General Business Law § 349

Plaintiff cannot make an end run around the exclusive remedy provisions in New York Tax Law by presenting the improper collection of sales tax as a claim under GBL § 349. *See Kupferstein*, 2017 WL 590324, at *3 ("Simply put, [the] plaintiff cannot avoid the force of New York Tax Law § 1139 by characterizing her claim as brought under New York General Business Law § 349. The state legislature established the New York Tax Commission and conferred on it exclusive responsibility for examining these kinds of claims."); *Estler*, 2016 WL 5720814, at 4 ("Plaintiffs' attempt to make an end run around the requirements of New York Tax Law fails. Plaintiffs' claims of . . . violations under [GBL § 359] are dismissed."); *see also Estler*, 691 F. App'x at 7 (dismissing claim under GBL § 349 because "N.Y. Tax Law §§ 1139 and 1140 explicitly foreclose legal remedies other than the mandatory administrative procedure described therein to recover improperly collected sales taxes."). For the same reasons Plaintiff's claims under § 1139 fail to state a claim, "Plaintiff's claims of fraud under N.Y. General Business Law [§] 349 . . . that [is] predicated on the sales tax overcharge allegations must be dismissed." *Cohen*, 2013 WL 9450421, at *3. Accordingly, the Court grants Defendant's Motion To Dismiss the claims under GBL § 349.

---

[11] Because it is ultimately immaterial to the outcome of the Motion, the Court declines to wade into the question of whether the mailers at issue here contained "coupons," as defined in the New York Tax Law, subject to the taxing scheme outlined in 20 NYCRR § 526.5(c). (*See* Def.'s Mem. 3 n.1; Pl.'s Mem. 21–23; Def.'s Reply Mem. 5–6; Mar. 7, 2018 Pl. Letter 2–3.)

### 3. Plaintiff's Claims for Unjust Enrichment

Plaintiff's claim that Costco has received a "windfall" at the expense of Plaintiff and the other putative class members, and thus he should be able to pursue a claim for unjust enrichment, fails for the same reasons explained above. (Pl.'s Mem. 20–21.) Here, too, Plaintiff cannot sidestep the exclusive remedy for allegedly illegal tax collection outlined in § 1139 by phrasing it as a claim for unjust enrichment. *Estler*, 2016 WL 5720814, at *4 (dismissing unjust enrichment claim); *Davidson* 558 N.Y.S.2d at 1011 (holding the plaintiff's allegations that the defendants' collection of sales taxes "was improper, unnecessary, unauthorized . . . and . . . an unjust enrichment" were precisely the type of claims that "must be raised in an administrative proceeding" and considered by the taxing authority in the first instance"). While Plaintiff has alleged troubling conduct by Costco, the Court cannot re-write New York law, which dictates that Plaintiff's remedy lies with the Tax Commission, and not the Court. Thus, the Court grants Defendant's Motion To Dismiss the unjust enrichment claim.

### III. Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is granted. Because Plaintiff has already amended his Complaint once in response to Defendant's Motion and repleading could not remedy the defects that serve as the basis for dismissal in this Opinion, the dismissal is with prejudice. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 16), and close this case.

DATED: September 24, 2018
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE